# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00187-CR

**Joe Middleton, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
### NO. 5040206, HONORABLE DONALD LEONARD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

After a bench trial, appellant Joe Middleton was convicted of the offense of burglary of a habitation. *See* Tex. Pen. Code Ann. § 30.02 (West 2003). The indictment contained two enhancement paragraphs enumerating a total of three prior felony convictions for burglary offenses. The court sentenced appellant to forty years' confinement. In two points of error, appellant contends that the evidence was legally and factually insufficient to support his conviction. We affirm the trial court's judgment.

### Background

On February 16, 2004, Thalia Norris returned to her home to find the screen door hanging off its frame and the door to the house open. There was a dirt footprint on the door as if it had been kicked in. Norris testified that she had closed and locked the door before she left, and that she had not given permission to appellant or anyone else to enter her home or to remove any items.

Items that had been taken included some dolls, a dresser drawer, a box of silverware, a clothes dryer, and linens.

Janet Middleton, appellant's sister, testified that she, her daughter, her grandchild, and appellant and his girlfriend Kyesha Carter lived in one house on Grayson Lane in February of 2004. The house had belonged to the Middletons' now-deceased mother. Although no formal proceedings had occurred to transfer title, Janet, appellant, and their sister Patricia considered themselves the owners of the house.

Appellant lived in the front room of the house, which was a garage converted into a bedroom. When Carter stayed at the house, she stayed in appellant's room. Appellant had a lock on the bedroom door. Janet testified that only she and appellant had keys to the house. Janet also testified that there were times when she had gone into appellant's room to get something and he would later question her about having been in there. She also testified that he would tell her that he "just knew" somebody had been in his room. He did not, however, forbid her from entering his room.

On March 2, 2004, officers from the Travis County Sheriff's Department went to the house to execute an arrest warrant for Carter, a known associate of appellant. The warrant resulted from an investigation by Detective Chris Orton into the Norris burglary as well as several others.[1]

---

[1] One of the other burglaries is discussed in *Middleton v. State*, 187 S.W.3d 134 (Tex. App.—Texarkana 2006, no pet.) (transferred from the Third Court of Appeals at Austin, *see* Tex. Gov't Code Ann. § 73.001 (West 2005)). Appellant was arrested on February 24, 2004, for outstanding warrants. 187 S.W.3d at 139. He was driving a white van, which was parked on the property on March 2, 2004, when the police arrived with the warrant for Carter. The officers removed some property from the van on March 2; it is does not appear that any of that property is relevant to this case.

2

When the officers arrived, no one was at the house, but Janet returned while the officers were still there. She signed a consent form giving the officers permission to search the house. Several of Norris's belongings were found in the house, including the missing drawer containing personal items, an empty flatware box, photos, and a picture frame. These items were found in appellant's bedroom. Several days after the search warrant had been executed, Orton testified that he talked to appellant's cousin, who told him about dolls that were still in appellant's house. Orton went to appellant's house and recovered two baby dolls and a geisha doll from Janet. Janet found the dolls in the living room. She told Orton that appellant told her that the dolls were from a house that he had recently broken into and that the house appeared to be that of an elderly person.

Appellant testified in his defense. He said that he had not noticed the stolen items. He explained the presence of the property by claiming that Carter, who had pawned several of the stolen items, took the property. He said that his cousin was the one who brought these dolls into the house. Appellant denied stealing them.

**Discussion**

In two points of error, appellant urges that the evidence was legally and factually insufficient to sustain the verdict. The question presented in a sufficiency review is whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 324 (1979) (legal sufficiency); *Griffin v. State*, 614 S.W.2d 155, 158-59 (Tex. Crim. App. 1981) (legal sufficiency); *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000) (factual sufficiency). In a legal sufficiency review, all the evidence is reviewed in the light most favorable to the verdict; it is assumed that the trier of fact resolved

3

conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Griffin*, 614 S.W.2d at 159 (citing *Jackson*, 443 U.S. at 318-19). In a factual sufficiency review, all the evidence is considered in a neutral light, including the testimony of defense witnesses and the existence of alternative hypotheses. *Johnson*, 23 S.W.3d at 9; *Orona v. State*, 836 S.W.2d 319, 321 (Tex. App.—Austin 1992, no pet.). Although due deference still must be accorded the fact finder's determinations, particularly those concerning the weight and credibility of the evidence, the reviewing court may disagree with the result in order to prevent a manifest injustice. *Johnson*, 23 S.W.3d at 9.

A person commits a burglary if, without the effective consent of the owner, he enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony, theft, or an assault. Tex. Pen. Code Ann. § 30.02 (West 2003). Burglarious entry can be proven solely through circumstantial evidence. *Gilbertson v. State*, 563 S.W.2d 606, 608 (Tex. Crim. App. 1978); *Tabor v. State*, 88 S.W.3d 783, 786-87 (Tex. App.—Tyler 2002, no pet.). In cases in which there is independent evidence of a burglary, the unexplained personal possession of recently stolen property does not give rise to a presumption of guilt, but rather will support an inference of guilt of the offense in which the property was stolen. *Hardesty v. State*, 656 S.W.2d 73, 76 (Tex. Crim. App. 1983). To warrant an inference of guilt based solely on the possession of stolen property, it must be established that the possession was personal, recent, and unexplained. *Tabor*, 88 S.W.3d at 786.[2] Also, the possession must involve a distinct and conscious assertion of

---

[2] In a case not cited by appellant, we held that equal access negated the inference to be drawn from the possession of recently stolen property. *See England v. State*, 727 S.W.2d 810, 811 (Tex. App.—Austin 1987, no pet.). In this case, however, there is evidence that there was not equal

right to the property by the defendant. *Id.* If the defendant offers an explanation for his or her possession of the stolen property, the record must demonstrate the account is false or unreasonable. *Adams v. State*, 552 S.W.2d 812, 815 (Tex. Crim. App. 1977). Whether a defendant's explanation for possession of recently stolen property is true or reasonable is a question of fact to be resolved by the trier of fact. *Dixon v. State*, 43 S.W.3d 548, 552 (Tex. App.—Texarkana 2001, no pet.).

The current case involves both the circumstantial evidence of the recent possession of stolen property and direct evidence in the form of Janet's testimony concerning appellant's admission. Within two weeks of the theft, the police found items stolen from the Norris residence in appellant's locked room over which he exercised significant control. Although other people lived in the house, there was testimony to support the conclusion that not everyone had access to appellant's locked bedroom and to support an inference that appellant possessed the property.

Appellant testified on his own behalf. He denied knowing about any of the items found in his bedroom. He said he did not know about the items because he was in jail, but the date of his arrest was eight days after the burglary. He explained that the dolls were brought into the house by his cousin.

Whether the appellant's explanation of his possession of the stolen property is reasonable is an issue to be determined by the fact finder. *Adams*, 552 S.W.2d at 815. The court was entitled to discount appellant's claim of failing to notice property that had appeared in a room over which he kept fairly close control. The court was entitled to believe Janet's account of events.

---

access to appellant's locked room. Further, *England* evaluated the evidence at a time when the State had to negate all reasonable alternative hypotheses in a circumstantial evidence case, an analysis later rejected. *See Geesa v. State*, 820 S.W.2d 154 (Tex. Crim. App. 1991).

Viewed in the light most favorable to the verdict, the evidence showed that appellant possessed items stolen from the burglary and exercised control over them by keeping them in a locked room. His sister testified about an admission of stealing certain property from the site of this burglary. Norris testified that she did not give permission for appellant to enter her property. A rational trier of fact could have found beyond a reasonable doubt that appellant burglarized Norris's property.

Viewing the evidence in a neutral light, bearing in mind the finder of fact makes credibility determinations, the evidence introduced to support the verdict is not so weak that the verdict seems "clearly wrong and manifestly unjust." *See Johnson*, 23 S.W.3d at 9. Considering conflicting evidence, the verdict is not against the great weight and preponderance of the evidence. *See id*.

Finally, the State notes appellant's argument that his "possession of the stolen property is clearly and easily explained by the involvement of Kyesha Carter." Even so, appellant is still an accomplice.[3] *See* Tex. Pen. Code Ann. § 7.02(a) (West 2003). An accomplice participates with a defendant before, during, or after the commission of a crime. *Paredes v. State*, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004). The participation must involve an affirmative act that promotes the commission of the crime. *Id*. However, the accomplice need not "actually participate in the commission of the offense to be criminally responsible" nor "be physically present at the commission of the offense" to be considered a party. *Guevara v. State*, 152 S.W.3d 45, 51-52

---

[3] There is no language about the law of parties in the indictment. However, the judge in a bench trial can find a defendant guilty as a party without such an allegation in the indictment. *See Diaz v. State*, 902 S.W.2d 149, 151 (Tex. App.—Houston [1st Dist.] 1995, no pet.).

(Tex. Crim. App. 2004). Accordingly, appellant's recent possession of stolen property supported the inference that he was guilty as a party by harboring the stolen property. We overrule appellant's two points of error.

## Conclusion

We have overruled both of appellant's points of error. Accordingly, we affirm the trial court's judgment.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed

Filed: November 15, 2006

Do Not Publish